878 F.2d 1446
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
BLOUNT BROTHERS CORPORATION, Appellant,
v.
The UNITED STATES, Appellee.
 No. 89-1063.
 United States Court of Appeals, Federal Circuit.
 May 26, 1989.
 
 Before MAYER, Circuit Judge, SKELTON, Senior Circuit Judge, and MICHEL, Circuit Judge.
 MICHEL, Circuit Judge.
 
 
 1
 Blount Brothers Corporation (Blount Bros.) appeals the decision of the Armed Services Board of Contract Appeals (board), ASBCA No. 30110 (June 15, 1988), denying entitlement to compensation for the extension of performance time granted to Blount Bros. as a result of the 59 day lapse of time between a submittal for a medical gases piping system cleaned with an uncontracted-for chemical and the United States Army Corps of Engineers' (government's) grant of a variance from the original contract specifications. We affirm.
 
 Background
 
 2
 The government and Blount Bros. entered into a contract for $97,700,000 dated August 12, 1982, for additions, alterations, and improvements to the existing hospital at Wright-Patterson Air Force Base to be completed without interference with continuous hospital operation. The controversy now before us centers on new piping systems installed by Blount Bros. for distributing oxygen from a bulk storage tank to its ultimate end uses in the hospital. There were two basic medical gas piping systems feeding from the same bulk oxygen tank: a 55 psi oxygen piping system* and a separate 200 psi oxygen piping system for the hospital's new Clinical Hyperbaric Facility.
 
 
 3
 When Blount Bros. ordered the medical gas piping from suppliers, it specified that "all ... fittings are to be cleaned and sealed for Medical Oxygen Service per Spec's Section # 15C." Section # 15C of the hospital improvement contract relating to the oxygen piping system, general provision 3.1, reads, "Materials and equipment furnished shall be of current production by manufacturers regularly engaged in manufacturing such items." Provision 7.8 of Section # 15C states:
 
 
 4
 Treatment: Before items are shipped by respective manufaturers they shall be treated as follows:
 
 
 5
 A. Disassemble and thoroughly wash valves in a hot solution of sodium carbonate or trisodium phosphate mixed in proportion of one pound to 3 gallons of water. Carbon tetrachloride shall not be used. After washing thoroughly, rinse with water and pack in dry asbestos packing or special packing suited for use with oxygen service.
 
 
 6
 B. Each length of tubing and each fitting shall be thoroughly washed inside, as specified for valves, shall be blown out, and shall be entirely free from any grease and oil. Seal ends of tubing effectively with plugs or soldered on caps.
 
 
 7
 (Emphasis added).
 
 
 8
 In the event that any of the tubing, fitting or valves became contaminated before assembly or installation, provision 8 of Section # 15C contained a rewash provision requiring the components of the system to be retreated in accordance with provision 7.8. The cleaning provision for components for the Clinical Hyperbaric Facility specifically excluded use of the chemical trichloroethylene for safety reasons.
 
 
 9
 Blount Bros. purchased pipe for the 55 psi oxygen pipe project, which had been treated by the manufacturers with trichloroethylene. The government rejected the medical gas piping submittals from Blount Bros. because the piping had not been cleaned with one of the two agents that the government had specified.
 
 
 10
 On April 27, 1983, Blount Bros. requested a variance from the pipe treatment provision of specification 15C. Before the government granted the variance, the government conducted an independent investigation on the safety of using trichloroethylene as a cleaning method on a 55 psi oxygen system. The government was concerned that trichloroethylene could migrate through the bulk storage tank from the 55 psi system to the 200 psi system, causing safety problems in the hyperbaric system since the systems shared the same oxygen storage tank. The government's concerns relating to the use of the chemical on the piping for the 200 psi system remained.
 
 
 11
 Blount Bros. submitted a certified claim for delay which the contracting officer denied, except for that delay already granted by the government. In addition, the contracting officer determined that the delay was non-compensable. Blount Bros. appealed to the board. The board decided that the excused stipulated 59 day delay arising out of this dispute was not compensable. Blount Bros. appeals.
 
 OPINION
 
 12
 Our jurisdiction arises from the Contract Disputes Act, 41 U.S.C. Sec. 607(g) (1982). Under the Act, the board's findings of fact may not be set aside unless "the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence." 41 U.S.C. Sec. 609(b) (1982). The board's conclusions of law regarding the interpretation of this disputed contract are neither final nor binding upon this court. George Hyman Construction Co. v. United States, 832 F.2d 574, 579 (Fed.Cir.1987).
 
 
 13
 "In undertaking a contract, the contractor promises to perform according to the contract specifications, and the Government has the right to insist on contractor performance in accordance with them." Jet Construction Co., Inc. v. United States, 531 F.2d 538, 543 (Ct.Cl.1976). Here, the terms of the contract are clear: the government asked for medical gas piping cleaned with one of two chemicals. It was, therefore, entitled to it.
 
 
 14
 Although Blount Bros. argues that general provision 3.1 calling for materials in "current production" meant that Blount Bros. could use any pipe that was especially prepared by the manufacturer for oxygen service, there was a more specific provision, i.e., 7.8, describing the appropriate treatment by one of two chemicals prior to shipment by the manufacturer. More specific provisions control more general provisions. Dravco Corp. v. United States, 480 F.2d 1331, 1335 (Ct.Cl.1973). See also Kolar, Inc. v. United States, 650 F.2d 256, 262 (Ct.Cl.1981) ("The specific language of the dangerous property clause takes precedence over the more general language of the other clauses."). Therefore, we conclude that the contract required Blount Bros. to use pipe that had been cleaned by one of two chemicals listed in provision 7.8.
 
 
 15
 Moreover, the contract rewash provision 8 called for the retreatment of any pipe that had been shipped and had not been treated by the manufacturer, or pipe that had been contaminated prior to assembly, in accordance with the pre-shipment contract instructions. Blount Bros. argues that provision 8 demonstrates that pipe especially prepared for oxygen service shipped by a manufacturer is excluded from provision 7.8. Blount Bros. plainly ignores that provision 8 is a rewash provision. However, as Blount Bros. itself points out, it is well-established that an interpretation giving meaning to all parts of a specification is preferred over one which renders portions of the specification void, meaningless or inconsistent. United States v. Johnson Controls, Inc., 713 F.2d 1541, 1555 (Fed.Cir.1983). Reading the contract as a whole, provision 8 requires the main contractor to follow the contract's washing instructions listed in provision 7.8 if he receives unwashed pipe or the pipe becomes contaminated.
 
 
 16
 We have examined Blount Bros.' argument concerning a lack of cooperation by the government and determine it has no merit.
 
 
 17
 The board concluded that Blount Bros. failed to meet its burden of proof regarding commercial impracticability or impossibility. We agree. The contractor has the burden to prove that it explored and exhausted alternatives before concluding the contract was legally impossible or commercially impracticable to perform. Jennie-O Foods, Inc. v. United States, 580 F.2d 400, 409 (Ct.Cl.1978). The instant contract contained specific instructions either for the manufacturer or the contractor on how to wash the piping. To prevail on impossibility, Blount Bros. would have had to demonstrate that neither it nor its supplier could have washed the piping with the chemicals specified in the contract or that doing so would have been unreasonably and excessively slow, difficult, or costly. It made no such showing.
 
 
 18
 Accordingly, we affirm.
 
 
 
 *
 Three systems were connected to the 55 psi oxygen piping system: an air piping system; a nitrous oxide and nitrogen piping system; and an oxygen piping system